IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIM. NO. 08-00739 (01) SOM |
| | ) | CIV. NO. 18-00287 SOM/KSC |
| Plaintiff, | ) | |
| | ) | ORDER DENYING PETITION UNDER |
| vs. | ) | 28 U.S.C. § 2255; ORDER |
| | ) | DENYING REQUEST FOR AN |
| RAMIRO HERNANDEZ (01), | ) | EVIDENTIARY HEARING; ORDER |
| | ) | DENYING CERTIFICATE OF |
| Defendant. | ) | APPEALABILITY |
| _____ | ) | |

**ORDER DENYING PETITION UNDER 28 U.S.C. § 2255;**
**ORDER DENYING REQUEST FOR AN EVIDENTIARY HEARING;**
**ORDER DENYING CERTIFICATE OF APPEALABILITY**

I.      **INTRODUCTION.**

On February 1, 2012, a jury convicted Defendant Ramiro Hernandez of three drug crimes. *See* Verdict, Feb. 1, 2012, ECF No. 397. Hernandez's crimes included: 1) conspiring to distribute or possess with intent to distribute more than 500 grams of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers; and 2) two counts of possession with intent to distribute the same. *Id.*

On September 18, 2014, the court sentenced Hernandez to 300 months of imprisonment as to each count, with all terms to run concurrently. The court also sentenced him to 5 years of supervised release for each count, with all terms to run concurrently, as well as a $300 special assessment. *See* ECF No.

533 (Minutes of Sentencing Proceeding).  Judgment was entered on October 1, 2014.  ECF No. 535.

Hernandez appealed, and the Ninth Circuit affirmed in a Memorandum Decision filed on October 23, 2017.  *See* ECF Nos. 532 and 611.  The Mandate issued on November 28, 2017. *See* ECF No. 613.  Hernandez did not file a petition for certiorari in the United States Supreme Court.  *See* ECF No. 614, PageID # 10642.

Before the court is Hernandez's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, timely filed on July 26, 2018. *See* ECF No. 614.  The court denies this motion and declines to issue a certificate of appealability.

The court also denies Hernandez's request for an evidentiary hearing.  *See* ECF No. 616.

II.        **BACKGROUND FACTS.**

In July 2006, DEA Special Agent Richard Jones of Honolulu received a phone call from the Riverside County Sheriff's Department in California that informed him that drugs were in a car being shipped to Hawaii from California by Howard Peterson.  Pursuant to a search warrant, Jones and other agents searched the car and found drugs in its driveshaft.  Agents packed the driveshaft with fake drugs, reinstalled the driveshaft, and took the car back to the shipping company.

2

The shipping company informed the agents that it had received a fax from Peterson authorizing Matthew Hernandez to pick up the car in Honolulu. Agents discovered that Matthew Hernandez was traveling to Honolulu with Jose Perez. When someone picked the car up from the shipping company, agents, using a GPS device, followed the car until it was parked on the top level of the Pearlridge Shopping Center with its back tires on the cement block designed as a backstop for parked cars. Agents arrested Perez and John Gouveia, Jr., as they appeared to be attempting to remove the driveshaft from the car.

Perez made a voluntary post-arrest statement in which he said his half-brother, Ramiro Hernandez, had arranged for 14 pounds of "ice" to be shipped to Hawaii in the driveshaft of the car. Perez told the agents that Ramiro Hernandez and others had previously shipped 14 pounds of "ice" in the driveshaft of a different car.

On July 27, 2006, Agent Jones directed Perez to place recorded calls to Ramiro Hernandez about the drugs.

On August 9, 2006, Perez, Gouveia, and Matthew Hernandez were indicted for having conspired to distribute or possess with intent to distribute 500 grams or more of methamphetamine. The charge against Gouveia and Matthew Hernandez was dismissed, while Perez pled guilty. *See* Crim. No. 06-00420 SOM (02), ECF No 65.

On December 18, 2007, Ramiro Hernandez was arrested in Riverside, California, for state offenses. An arrest warrant for federal drug offenses was lodged as a detainer. Ramiro Hernandez was transferred to the District of Hawaii approximately one-year later to face the drug charges in this case. Gouveia was named as a co-Defendant in this case.

On January 9, 2009, Ramiro Hernandez pled not guilty with respect to the charges in this case. *See* ECF No. 25. He was ordered detained pending trial. *See* ECF No. 31.

Clifford Hunt was appointed as Ramiro Hernandez's attorney pursuant to the Criminal Justice Act. *See* Decl. of Ramiro Hernandez ¶ 16, ECF No. 614-3, PageID # 10885 ("Affidavit of Truth of Ramiro Hernandez" lacking notarization). Hernandez says he told Hunt that he wanted to plead guilty. According to Hernandez, Hunt spoke with the Government and was told that there would be no offer unless both Hernandez and Gouveia agreed to plead guilty. *Id.* Hernandez says Hunt told him that, if he did plead guilty, he would be subject to the same sentence as if convicted at trial. *Id.*

On August 3, 2010, this court began the first of two jury trials involving Ramiro Hernandez. Gouveia was also in the first trial. On August 18, 2010, the jury convicted Gouveia but was unable to come to a unanimous verdict with respect to Hernandez. *See* ECF No. 174.

4

A mistrial was declared with respect to Hernandez. Hernandez says he then again asked Hunt to attempt to negotiate a plea deal. *See* Hernandez Decl. ¶ 19, ECF No. 614-3, PageID # 10885.

On October 8, 2010, this court granted Hunt's motion to withdraw as Hernandez's attorney. *See* ECF No. 198. A written order to that effect was filed on October 18, 2010. *See* ECF No. 202. The day the court orally granted Hunt's motion, Hunt wrote to Hernandez, telling him that the Government had rejected Hernandez's offer to serve a stipulated sentence of ten or fifteen years. *See* ECF No. 614-5, PageID # 10911. Hunt said that the attorney for the Government, Assistant United States Attorney Jonathan Loo, had responded that the Government was willing to allow Hernandez to plead guilty to the conspiracy charge contained in Count 1 in exchange for dismissal of the possession charges in Counts 2 and 3. Hunt told Hernandez:

> In terms of sentencing, pleading guilty to the conspiracy would subject you to the same amount of imprisonment that we discussed if you were convicted for both shipments of methamphetamine charged in counts 2 and 3. I suggest you discuss this further with your new counsel if you are still interested in the United States' offer.

*Id.* Possibly it is this letter that Hernandez is referring to when he states that Hunt told him that, if did plead guilty, he would receive the same sentence as if convicted at trial. *See* ECF No. 614-3 ¶ 16, PageID # 10885.

Hernandez then retained Philip A. DeMassa as his
attorney. DeMassa reviewed Hunt's letter and agreed that
Hernandez would get the same sentence if he pled to one or all
three counts. Hernandez says DeMassa then said that he would get
him a "4 year telephone count deal." Hernandez Decl. ¶ 28, ECF
No. 614-3, PageID # 10887.

Hernandez says that, in January 2011, he asked DeMassa
whether DeMassa knew anyone related to Hernandez's case.
Hernandez says that DeMassa told him, "No, I would have to
disclose that to you." Hernandez Decl. ¶ 26, ECF No. 614-3,
PageID # 10886.

In or about May 2011, the Government informed Hernandez
that the Government had retained an expert, Ryan Johnson, who had
opined that he was about 80% sure that the voice on the calls
Agent Jones had directed Perez to make to Hernandez was not
Hernandez's. DeMassa responded in letters of May 11 and 13,
2011, asking the Government to move to dismiss the charges and to
release Hernandez on bail while considering DeMassa's dismissal
request. *See* ECF No. 614-9, PageID #s 10919-20. Hernandez says
that AUSA Loo told DeMassa that the Government was proceeding
with the case, not dismissing it. Hernandez Decl. ¶ 34, ECF No.
614-3, PageID # 10887. DeMassa expressed optimism that Hernandez
would win at trial given the Government's expert's view that the
voice on the tapes did not belong to Hernandez, which DeMassa

6

indicated would give rise to reasonable doubt about Hernandez's guilt. *Id.* ¶ 35, ECF No. 614-3, PageID # 10888. DeMassa therefore counseled Hernandez not to seek a plea deal. *Id.* ¶ 39, ECF No. 614-3, PageID # 10888.

Hernandez's second jury trial began on January 4, 2012, with DeMassa representing Hernandez. *See* ECF Nos. 361, 614-6. On February 1, 2012, the jury convicted Hernandez of all three drug counts. *See* ECF No. 397.

Hernandez says the Speedy Trial Act ran before his second trial started. However, time was excluded through many stipulations, orders, and motions, some by Hernandez:

| Time Excluded From | Time Excluded to | ECF No. |
|---|---|---|
| 1/12/09 (should be 1.20?) | 5/19/09 | 29 |
| 5/19/09 | 8/18/09 | 50 |
| 8/18/09 | 2/2/10 | 64 |
| 2/3/10 | 4/28/10 | 79 |
| 4/28/10 | 7/27/10 | 89 |
| 7/4/10 | 8/2/10 # 128 hearing | 101, 102, 103 (Motions in limine) |
| 8/3/10 | | First Trial Began |
| 8/18/10 | | First Trial Ended; #183 (8/18/10) declares mistrial |

| | | |
|---|---|---|
| Speedy Trial Act Time Reset on day of mistrial, starting new 70-day clock. *See United States v. Pitner*, 307 F.3d 1178, 1182 (9th Cir. 2002); 18 U.S.C. § 3161(e) ("If the defendant is to be tried again following a declaration by the trial judge of a mistrial or following an order of such judge for a new trial, the trial shall commence within seventy days from the date the action occasioning the retrial becomes final.") | | |
| 9/23/10 | 12/9/10 #214 hearing | #189: U.S. Motion to Compel Testimony (excludes time under 18 U.S.C. § 3161(h)(1)(d) for "any pretrial motion" |
| 10/13/10 | 1/26/11 | 193 |
| 12/23/10 | 4/25/11 | 217 |
| 3/13/11 | 10/6/11 #323 hearing | 246 Renewed motion to suppress wiretaps |
| 4/26/11 | 7/12/11 | 252 |
| 7/12/11 | 10/18/11 | 307 |
| 10/18/11 | 1/4/12 | 340 |
| 1/4/12 | | Jury Selection for Second Trial |

On October 23, 2017, the Ninth Circuit affirmed Hernandez's conviction and judgment. At trial, this court admitted into evidence Raymond Villagomez's statements against Hernandez under Federal Rule of Evidence 804(b)(6) (the "forfeiture by wrongdoing" exception). In relevant part, the Ninth Circuit ruled that,

> a preponderance of the evidence supported the conclusion that Hernandez intended for and caused Villagomez to be unavailable at trial, and that, as a result, the admission of Villagomez's statements did not violate the Confrontation Clause. . . . That evidence included the facts that: (1) Hernandez's relatives and associates threatened Villagomez to convince him not to testify; (2) Villagomez's identity as a witness was not readily available to outside parties and therefore was likely communicated to Hernandez's relatives by or at the direction of Hernandez; and (3) Hernandez repeatedly nodded his head when Villagomez refused to answer questions at trial.

*See* ECF No. 611, PageID # 10624-25.

## III.    **ANALYSIS.**

A federal prisoner may move to vacate, set aside, or correct his or her sentence if it "was imposed in violation of the Constitution or laws of the United States, . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255.

Hernandez's petition and supporting memorandum are lengthy, repetitive, and at times difficult to comprehend. This court has attempted to discern the claims Hernandez is making. As set forth in more detail below, if this court has missed any of Hernandez's claims, he must notify this court no later than January 31, 2019, of such missed claim(s). Failure to so notify this court of claim(s) not addressed by this order will automatically result in the claim(s) being deemed waived.

Hernandez asserts many claims of ineffective assistance of counsel. To establish ineffective assistance of counsel, Hernandez must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). There is "a strong presumption" that counsel's conduct was reasonable and that counsel's representation did not fall below "an objective standard of reasonableness" under "prevailing professional norms." *Id.* at 688. Even if a petitioner can overcome the presumption of effectiveness, the petitioner must still demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Because "[i]t is all too tempting for a defendant to second-guess counsel's assistance

after conviction," judicial scrutiny of counsel's performance is highly deferential. *Id.* at 689.

> **A.    Hernandez Fails to Show That Clifford Hunt Was Ineffective.**

Hernandez argues that Hunt, his trial counsel for the first trial, was ineffective because Hunt failed to secure Hernandez a plea deal. However, according to Hernandez, the Government was not offering a plea deal prior to the first trial unless both Hernandez and Gouveia were going to plead guilty. Hernandez has not shown that Gouveia was willing to plead guilty. Hunt therefore cannot be said to have been ineffective in failing to secure a plea for Hernandez that the Government was unwilling to offer. *See Lafler v. Cooper*, 566 U.S. 156, 168 (2012) (noting that a defendant has no right to be offered a plea deal). Even assuming that Hernandez told Hunt to secure a plea deal, Hernandez does not show that he was prejudiced by any alleged shortcoming on Hunt's part in securing such a plea deal prior to the first trial.

After a mistrial was declared, Hernandez says he asked Hunt to further explore a plea deal. Hunt wrote to Hernandez to say that the Government had rejected Hernandez's offer to serve a sentence of ten or fifteen years. Hernandez presents no evidence that he authorized alternative terms. In any event, Hunt ceased

to be Hernandez's attorney and so ceased to be in a position to continue negotiations.

### B. Hernandez Fails to Show that Phillip DeMassa Was Ineffective.

After his first trial ended in a mistrial, Hernandez retained DeMassa as his attorney. Hernandez says that DeMassa (now deceased) was ineffective in many ways: (1) DeMassa allegedly failed to properly investigate the threats made to Villagomez; (2) DeMassa allegedly failed to obtain a plea deal, improperly advised him to go to trial, and sought dismissal of the Indictment, rather than a better plea deal when he got the Government's expert report with respect to voice analysis; (3) DeMassa allegedly failed to move to dismiss the Indictment on Speedy Trial Act grounds; (4) DeMassa allegedly labored under a conflict of interest; and (5) DeMassa allegedly failed to file a motion to dismiss based on outrageous government conduct. None of Hernandez's arguments is convincing.

### 1. Hernandez Does Not Show That DeMassa Was Ineffective With Respect to Investigating Threats Made to Villagomez.

This court concluded that Hernandez caused one or more his family members to threaten a government witness, Raymond Villagomez. This was litigated over a two-day evidentiary hearing. *See* ECF Nos. 373, 374, 403, 404, 418, 440. This

court's determination that Hernandez procured Villagomez's unavailability at trial was affirmed on appeal. *See* ECF No. 611, PageID # 10624-25.

Hernandez asserts that DeMassa was ineffective in failing to investigate what Hernandez's sister and uncle had to say about the incident. Hernandez says that his sister and uncle would have exonerated him with respect to the threats. Hernandez's uncle, Refugio Hernandez, says that he told DeMassa that he was the person who spoke with Villagomez and that he did not threaten Villagomez. *See* ECF No. 614-32, PageID # 11020. Hernandez's sister, Marcella Hernandez, similarly says in a declaration that she did not threaten Villagomez. *See* ECF No. 614-37, PageID #s 11043. While DeMassa, having passed away, cannot tell this court exactly what he was thinking at the time in question, he certainly knew the bases of this court's finding that threats had been made by Hernandez's relatives, including the very sister Hernandez now says DeMassa should have interviewed. DeMassa may have made a strategic decision not to interview family members out of concern that the interviews might introduce additional issues. It is Hernandez's burden to show that DeMassa's conduct fell below an objective standard of reasonableness. Hernandez does not meet that burden.

13

The court notes that the "new evidence" Hernandez gives this court with respect to this motion would not have made a difference in this court's determination that Hernandez procured Villagomez's unavailability. Notwithstanding the newly submitted declarations of Refugio Hernandez and Marcella Hernandez denying that they threatened Villagomez, *see* ECF Nos. 614-32, PageID # 11020, and ECF No. 614-37, PageID #s 11043, this court found that Villagomez was credible in testifying about the threats. *See* Transcript of Proceedings (Jan. 20, 2012) at 157-58, ECF No. 404, PageID #s 5217-18 ("I will say that, having watched Mr. Villagomez on the stand, it did appear to me that his fear was genuine. In testifying about being afraid, he seemed credible to me. And it was interesting that his fear was so great that he couldn't hold it in. . . . [W]hat I heard [was] a statement to the effect of: I want to live. I have a wife and four children.").

This court did not specifically limit threats to those made by Hernandez's uncle *or* sister. This court concluded that Hernandez was responsible for having given family members information about cooperating witnesses and that the family members threatened Villagomez. *See id.*, PageID # 5221 ("So people who were related to Mr. Hernandez and were accusing Mr.

14

Villagomez of being a snitch or expressing anger at him for testifying against Ramiro Villagomez likely heard it because Ramiro Hernandez wanted them to hear it."). Relief is not warranted by DeMassa's alleged failure to investigate threats allegedly made to Villagomez by Hernandez's family.

> **2. Hernandez Does Not Show That DeMassa Was Ineffective in Failing to Obtain a Plea Deal, in Advising Hernandez to Go to Trial, and in Failing to Seek Dismissal of the Indictment on Speedy Trial Act Grounds.**

Hernandez says DeMassa was ineffective in failing to negotiate a plea deal, causing Hernandez to go to trial and receive a higher sentence. But a plea agreement requires more than an attempt by defense counsel. The Government must be on board. Hernandez had no right to have the Government offer him any plea deal. *See Lafler*, 566 U.S. at 168. There is no evidence that the Government offered a plea deal acceptable to Hernandez.

In October 2010, Hernandez's prior counsel, Hunt, wrote to Hernandez, telling him that the Government had rejected Hernandez's offer to serve a stipulated sentence of ten or fifteen years. *See* ECF No. 614-5, PageID # 10911. AUSA Loo told Hunt that the Government was willing to allow Hernandez to plead guilty to the conspiracy charge contained in Count 1 in exchange

15

for dismissal of the possession charges in Counts 2 and 3. Hunt told Hernandez:

> In terms of sentencing, pleading guilty to the conspiracy would subject you to the same amount of imprisonment that we discussed if you were convicted for both shipments of methamphetamine charged in counts 2 and 3. I suggest you discuss this further with your new counsel if you are still interested in the United States' offer.

*Id.*

Hernandez appears to be arguing that DeMassa was ineffective in failing to follow up on Hunt's efforts by persuading Hernandez to accept a deal without his requested sentence or by failing to get some other deal. This court cannot say on the record before it that a strategic decision to go to trial fell below "an objective standard of reasonableness," especially in light of the jury's lack of unanimity in the first trial and the Government expert's opinion that the voice on the tape recordings was not Hernandez's voice. *See Strickland*, 466 U.S. at 681 ("Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment").

In any event, Hernandez does not clearly identify any prejudice arising from DeMassa's role in the decision to proceed

to a second trial. One basis for Hernandez's lengthy sentence was this court's finding that he had had someone threaten Villagomez, causing Villagomez to refuse to testify at the second trial. Hernandez cannot attribute to DeMassa this obstruction of justice enhancement.

DeMassa's alleged advice that Hernandez proceed to trial did not fall below "an objective standard of reasonableness." The Government's expert on voice identification had determined that Hernandez's voice was probably not on the tape recordings. DeMassa could have reasonably concluded that jurors would find reasonable doubt if the matter went to trial.[1] The Government disclosed new evidence between the first and second trials, but DeMassa could still have been justified in believing he could show reasonable doubt.

Nor did DeMassa's strategic decision to seek dismissal of the Indictment in light of the Government expert's voice identification report, rather than to seek a better plea deal, fall below "an objective standard of reasonableness." DeMassa acted objectively reasonably in seeking dismissal when he

---

[1]It does not appear that DeMassa guaranteed a win at trial. DeMassa sent a letter to Hernandez in February 2012 noting that he "cannot guarantee any result and made no predictions of a result." ECF No. 614-15, PageID # 10941. That same letter noted that this was what was "emphasized" in their contract. *Id.*

believed reasonable doubt existed with respect to the case against Hernandez.

### 3. Hernandez Does Not Show that DeMassa Was Ineffective in Failing to Seek Dismissal of the Indictment on Speedy Trial Act Grounds.

Hernandez next asserts that DeMassa was ineffective in failing to seek dismissal of the Indictment on Speedy Trial Act grounds. Unfortunately, Hernandez does not clearly outline how the Speedy Trial Act was violated. This court's review of the docket does not indicate that the Speedy Trial Act was violated with respect to either of Hernandez's trials.

The Speedy Trial Act generally requires defendants to be tried within 70 days "from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). In this case, the 70-day period was tolled by numerous stipulations, orders, and/or motions, as permitted by the Speedy Trial Act itself. *See* 18 U.S.C. § 3161(h).

Hernandez may be thinking that the Speedy Trial Act began to run when he was arrested in California. The California charges and the charges in this case are separate matters. The Speedy Trial Act was not running while Hernandez was in custody

in California in connection with California charges.  There is no
basis in the record for saying that DeMassa was ineffective in
failing to seek dismissal of the Indictment on Speedy Trial Act
grounds, as Hernandez fails to establish that any such motion
would have had merit.  *See Wilson v.* Henry, 185 F.3d 986, 990
(9th Cir. 1999) ("To show prejudice under *Strickland* from failure
to file a motion, [the defendant] must show that (1) had his
counsel filed the motion, it is reasonable that the trial court
would have granted it as meritorious, and (2) had the motion been
granted, it is reasonable that there would have been an outcome
more favorable to him."); *James v. Borg*, 24 F.3d 20, 27 (9th Cir.
1994) (holding that counsel was not ineffective for failing to
file a baseless or futile motion).

> **4.  Hernandez Does Not Show That DeMassa Was
> Ineffective With Respect to a Conflict of
> Interest.**

Hernandez asserts that DeMassa was ineffective with
respect to a conflict of interest arising out of a Government
witness's mother's attempt to hire DeMassa to be that witness's
attorney.  The mother of Rene Zendejas, a witness against
Hernandez, allegedly sought to hire DeMassa.  Hernandez says he
asked DeMassa whether DeMassa knew anyone related to the case and

was told, "No, if I did I would have to tell you."  Again,
Hernandez fails to demonstrate ineffective assistance of counsel.

The requirements for an ineffective assistance of
counsel claim based on counsel's alleged actual conflict of
interest have been the subject of several cases that are
controlling here.  *See United States v. Walter-Eze*, 869 F.3d 891,
900 (9th Cir. 2017).  Because it is difficult to measure the
precise effect on defense counsel's representation when that
representation is corrupted by a conflicting interest, prejudice
is presumed when "counsel actively represented conflicting
interests and . . . an actual conflict of interest adversely
affected [the] lawyer's performance."  *Strickland*, 466 U.S. at
692.

The Supreme Court has explained:

> [A] defendant who shows that a conflict of
> interest actually affected the adequacy of
> his representation need not demonstrate
> prejudice in order to obtain relief.  But
> until a defendant shows that his counsel
> actively represented conflicting interests,
> he has not established the constitutional
> predicate for his claim of ineffective
> assistance.

*Cuyler v. Sullivan*, 446 U.S. 335, 349–50 (1980) (quotation marks
and citation omitted).

The Supreme Court, in *Mickens v. Taylor*, 552 U.S. 162
(2002), made it clear that, while a defendant "need not
demonstrate prejudice," the defendant did need to show something
more than the existence of a conflict.  The Court explained that
an "actual conflict" for Sixth Amendment purposes is "a conflict
of interest that adversely affects counsel's performance."  *Id.*
at 172 n.5.

In other words, a defendant asserting an actual
conflict has the benefit of a presumption of prejudice only upon
showing that a negative consequence flowing from the conflict was
at least likely, even if that negative consequence might not
satisfy the ordinary prejudice burden.  An "actual conflict of
interest" must have "affected counsel's performance--as opposed
to [being] a mere theoretical division of loyalties."
*Walter-Eze*, 869 F.3d at 901 (quotation marks and citation
omitted).  "The inquiry is accordingly fact specific and does not
rely on the characterization or type of conflict presented: an
actual conflict is defined by its impact on counsel's
representation."  *Id.* (quotation marks and citation omitted).

To establish an impact on counsel's representation, a
defendant must show "'that some plausible alternative defense
strategy or tactic might have been pursued but was not and that

the alternative defense was inherently in conflict with or not
undertaken due to the attorney's other loyalties or interests.'"
*Id.* (quoting *United States v. Wells*, 394 F.3d 725, 733 (9ᵗʰ Cir.
2005)).  Counsel's performance was adversely affected if "some
effect on counsel's handling of *particular aspects* of the trial
was likely."  *Id.* at 901. (quotation marks and citation omitted).
This could include a counsel's failure to put on certain defenses
and witnesses, failure to explore the possibility of a plea
agreement, or failure to seek a continuance.  *Id.*

Hernandez does not show an actual conflict of interest
arising out of DeMassa's meeting with Zendejas's mother on a
single occasion.  Nothing in the record establishes what
Zendajas's mother talked about with DeMassa when she tried to
hire DeMassa.  The record certainly does not demonstrate what
Zendajas's mother told DeMassa about matters that DeMassa could
have used to cross-examine Zendajas.  While Hernandez says that
DeMassa "pulled punches" when cross-examining Zendajas at trial,
Hernandez does not plausibly explain the basis of that
contention.

At most, Hernandez says he obtained recorded
conversations of Zendajas indicating his intent to harm people
and to sell drugs.  Hernandez says that DeMassa could have used

the recordings to cross-examine Zendajas, but did not.  Hernandez

has failed to submit copies of those recordings to this court.

This court cannot even tell whether they were physically turned

over to DeMassa, much less whether DeMassa made a strategic

decision not to use them.  Nor does Hernandez show that the

recordings would have been admissible if offered.

DeMassa conducted a lengthy cross-examination of

Zendajas.  Hernandez has not demonstrated a likelihood that

DeMassa failed to pursue a plausible defense strategy because of

divided loyalties.  Hernandez therefore fails to establish

ineffective assistance of counsel based on an actual conflict of

interest.

**5. Hernandez Does Not Show That DeMassa Was Ineffective in Failing to Seek Dismissal of the Indictment Based on Outrageous Government Conduct.**

Hernandez asserts that DeMassa was ineffective in

failing to file a motion based on "outrageous government

conduct."  The Ninth Circuit has recognized that an indictment

may be dismissed based on "outrageous government conduct" when

the conduct rises to the level of a due process violation.

*United States v. Chapman*, 524 F.3d 1073, 1084 (9th Cir. 2008).

Such a motion will only be granted when the conduct "is so

grossly shocking and so outrageous as to violate the universal

sense of justice."  *United States v. Restrepo*, 930 F.2d 705, 712
(9ᵗʰ Cir. 1991) (quotation marks and citations omitted).

Hernandez argues that AUSA Loo was outrageous in
failing to dismiss the indictment in light of the Government
expert's opinion that Hernandez was not the person speaking on a
tape recording.  But considerable other evidence against
Hernandez warranted Loo's decision to continue to prosecute
Hernandez.  Nor did Loo act outrageously in seeking another
expert on the subject.  Hernandez does not show that, had DeMassa
filed an "outrageous government conduct" motion, it would likely
have been granted.  DeMassa cannot be said to have been
ineffective in failing to file a futile motion based on Loo's
decision to continue prosecuting Hernandez.  *See Wilson*, 185 F.3d
at 990; *James*, 24 F.3d at 27.

Hernandez also argues that DeMassa was ineffective in
failing to seek dismissal of the Indictment based on illegal
wiretaps, which Hernandez characterizes as "outrageous government
conduct."  But Hernandez had already unsuccessfully sought to
suppress the wiretaps.  *See* ECF Nos. 246, 323, 325.  On October
11, 2011, this court rejected DeMassa's argument made on behalf
of Hernandez that the California wiretaps were illegal because
they were signed by an unauthorized person.  *See* ECF No. 325.

DeMassa was not ineffective in failing to file a futile motion raising the same wiretap issue but calling it "outrageous government conduct."  *See Wilson*, 185 F.3d at 990; *James*, 24 F.3d at 27.

### C. Hernandez Fails to Show That Pamela O'Leary Tower Was Ineffective.

Hernandez asserts that his appellate counsel, Pamela O'Leary Tower, was ineffective in failing to raise the California wiretap issue rejected by this court.  *See Hurles v. Ryan*, 752 F.3d 768, 785 (9th Cir. 2014) ("A criminal defendant enjoys the right to the effective assistance of counsel on appeal."). Ineffective assistance of appellate counsel claims are also governed by the *Strickland* standard.  *Id.*  Hernandez must therefore show that Tower's "representation fell below an objective standard of reasonableness, and that, but for counsel's errors, a reasonable probability exists that he would have prevailed on appeal."  *Id.*

Hernandez had sought suppression of the wiretap evidence before this court.  This judge denied Hernandez's motion.  *See* ECF Nos. 246, 323, 325.  Hernandez does not demonstrate that Tower was objectively unreasonable in choosing not to raise the issue again on appeal.  Hernandez does not demonstrate any likelihood that the Ninth Circuit would have

reversed this court with respect to the wiretap issue.

Accordingly, he does not show that Tower was ineffective in

failing to raise the wiretap issue on appeal. *Moormann v. Ryan*,

628 F.3d 1102, 1109 (9th Cir. 2010) ("Counsel was not required to

raise a meritless issue on direct appeal."); *Jones v. Smith*, 231

F.3d 1227, 1239 n.8 (9th Cir. 2000) (stating that appellate

counsel was not ineffective for failing to raise an issue that

was not grounds for reversal); *Miller v. Keeney*, 882 F.2d 1428,

1434 (9th Cir. 1989) (noting that appellate counsel was not

ineffective in failing to raise every issue on appeal, and

further stating that appellate counsel was not ineffective in

failing to raise a weak issue on appeal that would detract from

stronger arguments).

### D.     The Court Decides This Matter Without a Hearing.

The court denies Hernandez's § 2255 motion without

holding an evidentiary hearing, as the record before the court

conclusively demonstrates that Hernandez is not entitled to

§ 2255 relief. *See* 28 U.S.C. § 2255(b) (requiring a hearing

"[u]nless the motion and the files and records of the case

conclusively show that the prisoner is entitled to no relief").

The court therefore denies Hernandez's motion asking this court

to conduct an evidentiary hearing. *See* ECF No. 616.

### E. The Court Declines to Issue a Certificate of Appealability.

The court declines to grant Hernandez a certificate of appealability. An appeal may not be taken to the court of appeals from a final order in a § 2255 proceeding "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). The court shall issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court denies a § 2255 petition on the merits, a petitioner, to satisfy the requirements of § 2253(c)(2), "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Reasonable jurists would not find this court's assessment of the merits of Gouveia's constitutional claims debatable or wrong.

## III.   CONCLUSION.

For the foregoing reasons, Hernandez's § 2255 motion and request for an evidentiary hearing, ECF Nos. 614 and 616, are denied.

If Hernandez believes that this court has inadvertently failed to address a ground for relief raised in his § 2255

motion, he is asked to so notify the court in writing by January 31, 2019, including in any such notification (1) a description of no more than 25 words of each such issue, (2) the date and title of the document in which the issue was raised, and (3) the page(s) of the document on which the issue was raised. This notification shall not include anything other than the preceding information and is not intended to be a substitute for any other motion or other filing. No court deadline is affected by this request for notification.

Because Hernandez may file such a notification, the Clerk of Court is directed not to enter judgment at this time. However, the Clerk of Court is directed to automatically enter judgment against Hernandez if the court receives no such notification by January 31, 2019.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 31, 2018.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

United States of America v. Gouveia, Crim. No. 08-00739 SOM (02); ORDER DENYING PETITION UNDER 28 U.S.C. § 2255; ORDER DENYING REQUEST FOR AN EVIDENTIARY HEARING; ORDER DENYING CERTIFICATE OF APPEALABILITY